IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ZIAD AKL, MD,                              )
                                           )
                    Plaintiff,             )
                                           )
           v.                              )   Civil Action No. 08-CV-0461 RBW
                                           )
MICHAEL LEAVITT,                           )
SECRETARY OF THE UNITED                    )
STATES DEPARTMENT OF HEALTH                )
AND HUMAN SERVICES                         )
                                           )
                    Defendant.             )

## <u>MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT</u>

Defendant Michael B. Leavitt, Secretary, United States Department of Health and Human

Services (HHS), by and through the undersigned counsel, hereby moves this Court to dismiss

Plaintiff's claims against HHS pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim

upon which relief can be granted.  In the alternative, Defendant moves that summary judgment

be entered in his favor pursuant to Fed. R. Civ. P. 56.  A supporting memorandum of points and

authorities, proposed order, and statement of material facts are submitted herewith.

Dated August 1, 2008                       Respectfully submitted,


                                           _____
                                                  /s/
                                           JEFFREY A. TAYLOR, D.C. BAR # 498610
                                           United States Attorney


                                           _____
                                                  /s/
                                           RUDOLPH CONTRERAS, D.C. BAR #434122
                                           Assistant United States Attorney

_____ /s/ Robin M. Meriweather_____
ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198   Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ZIAD AKL, MD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 08-CV-0461 RBW |
| | ) |
| | ) |
| MICHAEL LEAVITT, | ) |
| SECRETARY OF THE UNITED | ) |
| STATES DEPARTMENT OF HEALTH | ) |
| AND HUMAN SERVICES | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

### INTRODUCTION AND SUMMARY

Plaintiff  Ziad Akl, MD (Dr. Akl) is a physician whose medical staff privileges to practice at Virginia Hospital Center, Arlington Health Center were revoked after nurses at the hospital filed harassment charges against him.  See Akl v. Dougherty, No. 06-264, 2006 WL 5363178, at *1 (E.D. Va. June 7, 2006); Am. Compl. ¶ 32.  Having unsuccessfully filed numerous civil actions against hospital staff members and other individuals in state and federal court,[1] Dr. Akl now attempts to silence the messenger — HHS— which has reported the revocation of privileges in the National Practitioners Data Bank ("Data Bank") in accordance

---

[1] Dating back to 2004, Dr. Akl has brought at least eight other lawsuits alleging *inter alia* intentional infliction of emotional distress, tortious interference with contract, and conspiracies among various parties to wrongfully revoke his medical privileges (the subject matter of the reports in question in this case) at the Virginia Hospital Center.  Akl v. McTavish, No. 07-1025, slip op. at 2 (D. Md. Dec. 21, 2007) (Exh. 1 hereto).  He has brought suit against and alleged a conspiracy among numerous parties, including various court personnel and defense counsel from the previous cases.  Id. at 2-3.  All of these previous suits have been dismissed.  Id. at 2.

with its statutory duty to include peer review actions which adversely affect physicians' clinical privileges in that Data Bank. Specifically, Dr. Akl claims that HHS failed to make reasonable efforts to ensure that reports about the Plaintiff submitted by the Virginia Hospital Center and maintained by HHS in the Data Bank are accurate and complete, and that HHS failed to properly amend Plaintiff's records. Am. Compl. ¶¶ 46, 48.

Plaintiff's complaint fails to state a claim, for two reasons. First, Plaintiff has not exhausted his administrative remedies as required to pursue the claims seeking amendment of the records. Second, Plaintiff failed to bring his damages claims within the controlling statute of limitations, and they are therefore time-barred. In the alternative, Plaintiff's failure to exhaust and meet the statute of limitations supports the award of summary judgment to Defendant.

## BACKGROUND

### A.     Statutory and Regulatory Background

In 1986, Congress enacted the Health Care Quality Improvement Act ("HCQIA" or "Act") of 1986 (Title IV, Pub. L. No. 99-660), which established the National Practitioner Data Bank, 42 U.S.C.§§ 11101-52. This legislation was intended "to improve the quality of medical care" by restricting "the ability of incompetent physicians to move from State to State without disclosure or discovery of ... previous damaging or incompetent performance." Id. at § 11101. Congress sought to remedy "the increasing occurrence of medical malpractice" through effective professional peer review, by encouraging physicians and other health care practitioners to identify and discipline those who are incompetent or who engage in unprofessional conduct. Id.

The Act required the Secretary of HHS ("Secretary") to establish the Data Bank for collection and dissemination of, among other information, peer review action which "adversely

2

affects the clinical privileges of a physician" for more than 30 days. Id. at § 11133. Under the

Act, Congress sought to encourage professional review activity by providing statutory civil

damage immunity for any person engaging in professional review actions or providing

information to professional review bodies. Id. at § 11111.

The Data Bank does not provide a bright line test. It is primarily a flagging system

whose principal purpose is to facilitate a more comprehensive review of professional credentials.

Information received from the Data Bank is intended to be used in combination with other

sources of data in making determinations on granting clinical privileges, and in employment,

professional affiliation, or State licensure decisions. HHS made clear in issuing the regulations

governing the Data Bank that "information from the National Data Bank would serve as only an

indicator of professional quality and not as conclusive or complete evidence of it." 53 Fed. Reg.

9264 (Notice of Proposed Rulemaking ("NPRM") – National Data Bank for Adverse

Information on Physicians and Other Health Care Practitioners) (March 21, 1988)).

Hospitals must query the Data Bank every time a physician applies for clinical privileges

or is placed on staff. 42 U.S.C. § 11135. Hospitals also must query the Data Bank at least once

every two years regarding physicians on staff. Id. If a hospital fails to query as required, it may

lose its civil damages immunity and knowledge of the information in the Data Bank regarding a

practitioner will be imputed to it in the event of a medical malpractice lawsuit. Id. It is

mandatory for hospitals to report any professional review action that adversely affects the

clinical privileges of a physician for more than 30 days, or the acceptance of the surrender of

such clinical privileges while the physician is under investigation by the hospital for alleged

incompetence or improper professional conduct. Id. at § 11133. Medical malpractice payers,

State licensing boards, and professional medical societies are also required to report adverse

actions taken against physicians to the Data Bank.  Id. at §§ 11131-34.

The Act requires the Secretary to provide "procedures in the case of disputed accuracy of

the information" contained in reports in the Data Bank.  Id. at § 11136.  The Data Bank

regulations state that any physician who is the subject of a report to the Data Bank may

challenge the accuracy of the information in the report.  45 C.F.R. § 60.14.  The regulations

permit the practitioner to dispute the factual accuracy of the reported information and also

whether the report was filed in accordance with the Data Bank's reporting requirements,

including the eligibility of an entity to report to the Data Bank.  Id.

Disputing the accuracy of Data Bank reports is a multi-step procedure which is set out in

the Data Bank regulations.  When a report is filed with the Data Bank, the Data Bank mails a

Practitioner Notification Document containing pertinent information to the practitioner who is

the subject of the report.  Id.  The practitioner then has 60 days to request that the report be

placed in "disputed" status.  Id.  To initiate the dispute, the practitioner must bring the alleged

inaccuracy to the reporting entity's attention and request a correction.  The reporting entity must

then void the report or correct any inaccuracy.  If the reporting entity does not void or correct an

inaccuracy to the practitioner's satisfaction, then the practitioner may request that the contested

information be placed in a "disputed" status category and appeal to the Secretary for review of

the information.  Id.

### B.    Factual Background

Dr. Akl was on the medical staff of the Virginia Hospital Center (the "Hospital").  Am.

Compl. ¶ 31.  The Hospital revoked Plaintiff's appointment to the medical staff.  Am. Compl. ¶

4

32.  The Hospital reported a summary suspension of Plaintiff's clinical privileges to the Data

Bank ("Report No. 1") on February 9, 2004.  Am. Compl. ¶ 33.  On August 20, 2004, the

Hospital reported the revocation of Plaintiff's clinical privileges and medical staff appointment

to the Data Bank ("Report No. 2").  Am. Compl. ¶ 33.

Plaintiff requested Secretarial Review of Report No. 1 on May 10, 2006, and requested

Secretarial Review of Report No. 2 on November 29, 2005.  Am. Compl. ¶ 35.  During the

Secretarial Review of both reports, the Data Bank instructed the Hospital to change the reports to

further elaborate on the facts.   Am. Compl. ¶ 36.  On March 21, 2006, the Hospital replaced

Report No. 1 with a more detailed report ("Amended Report No. 1").  Am. Compl. ¶ 37.  On

May 24, 2006, the Hospital replaced Report No. 2 with a more detailed report ("Amended

Report No. 2").  Am. Compl. ¶ 39.  Amended Report No. 1 and Amended Report No. 2 were

reviewed in the Secretarial Review process.  Am. Compl. ¶¶ 38, 40.  The Data Bank found both

reports to be accurate, complete, timely and relevant for agency purposes.  Am. Compl. ¶¶ 38,

40.

The Plaintiff sets forth three counts in his Complaint.  Am. Compl. ¶¶ 62-79.  Count I

alleges a violation of 5 U.S.C. section 552a(d)(3) for refusal to amend the Plaintiff's Data Bank

reports.  Am. Compl. ¶¶ 62-66.  Count II alleges violation of 5 U.S.C. section 552a(e)(5) and

seeks action pursuant to 5 U.S.C. section 552a(g)(1)(D) for failure to make reasonable efforts to

assure that the Plaintiff's Data Bank reports are accurate and complete.  Am. Compl. ¶¶ 67-73.

Count III alleges violation of 5 U.S.C. section 552a(e)(6) and seeks action pursuant to 5 U.S.C.

section 552a(g)(1)(D) for failure to make reasonable efforts to assure that the Plaintiff's Data

Bank reports are accurate and complete.  Am. Compl. ¶¶ 74-79.

## STANDARD OF REVIEW

Rule 12(b)(6) requires dismissal if a plaintiff fails to plead enough facts to state a claim for relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007) (abrogating prior standard which required the moving party to show that plaintiff can prove no set of facts in support of its claim which would entitle it to relief).  In deciding a Rule 12(b)(6) motion, this Court must accept all well-pleaded facts as true.  See Doe v. United States Dep't of Justice, 753 F.2d 1092, 1102 (D.C. Cir. 1985).  The Court also must resolve all factual doubts in favor of the plaintiff, and allow the plaintiff the benefit of all inferences.  See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997); Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  However, the court does not need to accept legal conclusions cast as factual allegations or inferences drawn by the non-moving party that are unsupported by the facts alleged in the complaint.  Kowal, 16 F.3d at 624.

Defendant moves in the alternative for summary judgment.  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995); Molerio v. FBI, 749 F.2d 815, 823 (D.C. Cir. 1984).  Where no genuine dispute exists as to any material fact, summary judgment is required.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

A genuine issue of material fact is one that could change the outcome of the litigation. Id. at 247.  "The burden on the moving party may be discharged by 'showing' – that is, pointing

6

out to the (Court) – that there is an absence of evidence to support the non-moving party's

case." <u>Celotex</u>, 477 U.S. at 325.  <u>Id</u>.  Once the moving party has met its burden, the non-movant

may not rest on mere allegations, but must proffer specific facts showing that a genuine issue

exists for trial.  <u>See</u> <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574,

586 (1986).  Federal Rule of Civil Procedure 56 requires the party opposing summary judgment

go beyond the pleadings, and by affidavits, depositions, answers to interrogatories or admissions

set forth "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e);

<u>Celotex</u>, 477 U.S. at 324; <u>Banks v. C & P Tel. Co.</u>, 802 F.2d 1416 (D.C. Cir. 1986).

## ARGUMENT

## I.    PLAINTIFF'S AMENDMENT CLAM IS NOT VIABLE BECAUSE HE  FAILED TO EXHAUST AMENDMENT REMEDIES.

It is well established that prior to bringing a lawsuit seeking amendment of records under

the Privacy Act, plaintiffs must first exhaust their administrative remedies.  <u>Dickson v. Office of</u>

<u>Personnel Management</u>, 828 F.2d 32, 40 (D.C. Cir. 1987); <u>Hill v. U.S. Air Force</u>, 794 F.2d 1067,

1069 (D.C. Cir. 2006); <u>Mulhern v. Gates</u>; 525 F. Supp. 2d 174, 183 (D.D.C.  2007); <u>Lee v.</u>

<u>Green</u>, 480 F. Supp. 2d 198, 206 (D.D.C. 2007).  Premature Privacy Act suits are either

dismissed for failure to state a claim, or resolved in favor of the defendant on a motion for

summary judgment.  <u>See</u> <u>DeMartino v. FBI</u>, 511 F. Supp. 2d 146, 152 (D.D.C. 2007) (granting

summary judgment because plaintiff failed to exhaust); <u>Leighton v. Central Intelligence Agency</u>,

412 F. Supp. 2d 30, 35-36 (D.D.C. 2006) (dismissing claim for failure to exhaust).

Privacy Act plaintiffs seeking an injunction directing the agency to amend their records

must complete a two-step exhaustion process.  <u>Leighton</u>, 412 F. Supp. 2d 30, 34-35 (D.C. Cir.

2006).  First, the individual must request amendment under section 552a(d)(2) of the Privacy

7

Act, which requires each agency that maintains a system of records to "permit [an] individual to request amendment of a record pertaining to him." 5 U.S.C. § 552a(d)(2); see Leighton, 412 F. Supp. 2d at 34-35. If the agency refuses to amend the records, the second step is for the individual to request a second level of review under section 552a(d)(3), which allows parties to obtain a review of the original decision by an agency official. 5 U.S.C. § 552a(d)(3); see Leighton, 412 F. Supp. 2d at 35. Both of these steps must be completed. See Leighton, 413 F. Supp. 2d at 35; Dickson, 828 F.2d at 40.

Dr. Akl's complaint does not contain facts sufficient to establish that he has satisfied the Privacy Act's exhaustion requirements. The complaint alleges that Dr. Akl requested agency review of Report Nos. 1 and 2, and that he "initiated a dispute" regarding Amended Report No. 2, but contains no such allegations regarding Amended Report No. 1. See Am. Compl. ¶¶ 37-38. Further, Dr. Akl does not allege that he sought further agency review of the initial determination of HHS concerning any of the Data Bank reports at issue.

In fact, Dr. Akl did not appeal any of HHS's initial determinations regarding the Data Bank reports. HHS informed him of its determination regarding Amended Report No. 1 on June 9, 2006, and advised him of his right to appeal the decision by seeking agency reconsideration. See Declaration of Robert E. Oshel, Ph.D., ¶ 9 (Exh. 2 hereto). By letter dated May 22, 2006, HHS informed Dr. Akl of its determination regarding Amended Report No. 2, and also advised him of his appeal rights. See id. ¶ 10. Dr. Akl did not appeal either determination. See id. ¶ 11. Therefore, he has not complied with the second step of Privacy Act exhaustion. Count I of the complaint — which seeks amendment of Amended Report Nos. 1 and 2 — therefore must be resolved in Defendant's favor.

8

## II.    PLAINTIFF'S DAMAGES CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS AND THEREFORE COUNTS II AND III SHOULD BE RESOLVED IN FAVOR OF DEFENDANT.

Dr. Akl appears to seek damages for Defendant's alleged failure to correct both the original and amended versions of Report Nos. 1 and 2.  That request for damages comes long after the expiration of the Privacy Act's two year statute of limitations.  Therefore, it is time barred.

The Privacy Act provides that "[a]n action to enforce any liability created under this section may be brought in the district court . . . within two years from the date on which the cause of action  arises . . .."  5 U.S.C. § 552a(g)(5).  The statute of limitations begins to run when the plaintiff knows or should know of the alleged violation.  Tijerina v. Walters, 821 F.2d 789, 798 (D.C. Cir. 1987); Doe v. Thompson, 332 F. Supp. 2d 124, 133 (D.D.C. 2004).  The Data Bank sends a copy of any reports filed with the Data Bank to the subjects of the reports.  45 C.F.R. § 60.14.  Plaintiff would have received notice of Report No. 1 shortly after February of 2004 and notice of Report No. 2 shortly after August of 2004.  He did not bring the present suit until March of 2008, nearly four years after the cause of action arose.  Therefore, the Plaintiff's claims in Count II and Count III should be dismissed for failure to state a claim, or summary judgment should be awarded for Defendant.

The dates that the Plaintiff originally became aware of the reports in 2004 are the appropriate dates to use for purposes of calculating the statute of limitations — not the later dates on which the amended reports were issued.  The amended reports describe the same events as the original reports, but simply do so in a more detailed manner.  Am. Compl. ¶¶ 37, 39.  The

9

Plaintiff has raised the same or similar issues for all four of the reports. Am. Compl. ¶¶ 33-39. Finding otherwise would lead to the strange result of encouraging agencies to refrain from changing or correcting records outside the statute of limitations pursuant to valid inquiries for fear of subjecting the agency to liability on claims that were time-barred. HHS should not be penalized for its attempts to address Dr. Akl's concerns.

        If any Privacy Act violations occurred because of the amended reports, these violations would only be continuing violations arising from the original reports. A claim under the Privacy Act is not tolled by continuing violations. Davis v. United States Department of Justice, 204 F.3d 723, 726 (7th Cir. 2000); Doe, 332 F. Supp. 2d at 133. Therefore, the dates that the Plaintiff became aware of his original reports in 2004 are the key dates for statute of limitations purposes.

        In Doe, this Court was faced with a similar set of facts and used the date of the report and not the later date of amendment, as the court should do in the present case. In that case, the plaintiff received notice of his Data Bank report in 1994 and requested secretarial review of the report in May of 2002. Doe, 332 F. Supp. 2d at 126-27. Sometime after the submission of the report for secretarial review in May of 2002, the report was amended and the plaintiff brought suit in November of 2002. Id. at 127, 133. Even though plaintiff brought suit only a few months after his report was amended, the court used the earlier date on which the report was filed (1994) for purposes of calculating the statue of limitations. Id. at 133. This case warrants the same approach.

### III.    HHS DID NOT USE THE RECORDS TO MAKE ANY SECTION 552A(E)(5) DETERMINATIONS REGARDING PLAINTIFF.

In addition to statute of limitations issues, Plaintiff's claim under Section 552a(e)(5) of the Privacy Act must be dismissed because HHS did not make any determination regarding him based on the reports at issue.  Section 552a(e)(5) of the Privacy Act requires agencies to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5).  To establish a violation of this section, a plaintiff must demonstrate that the agency made some unfair determination about the individual based on an erroneous privacy act record.  Deters v. U.S. Parole Com'n, 85 F.3d 655, 660-61 (D.C. Cir. 1996); NTEU v. IRS, 601 F. Supp. 1268, 1272 (D.D.C. 1985).

In this case, Plaintiff has failed to allege that the agency used the reports in question to make any determination about the Plaintiff.  Dr. Akl has alleged that the reports have caused him to be denied privileges.  See Am. Compl. ¶ 58.  However, that decision clearly was made by private parties and not by HHS.

Furthermore, a plaintiff seeking damages under Section 552a(e)(5) of the Privacy Act must sue under Section 552a(g)(1)(C) and not under Section 552a(g)(1)(D).  Deters, 85 F.3d at 660.  Plaintiff inappropriately seeks damages under Section 552a(g)(1)(D) for the alleged violation of Section 552a(e)(5).  In sum, Defendant has not violated Section 552a(e)(5), Plaintiff is seeking damages under an inapplicable portion of the Privacy Act, and Count II of Plaintiff's Complaint should therefore be dismissed.

### CONCLUSION

11

For the reasons stated in this memorandum, Plaintiff's Complaint should be dismissed.

In the alternative, Defendant requests that summary judgment be entered in its favor.

Respectfully submitted,

    /s/_____

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


    /s/_____

RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


    /s/ Robin M. Meriweather_____

ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198   Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ZIAD AKL, MD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-CV-0461 RBW |
| | ) | |
| MICHAEL LEAVITT, | ) | |
| SECRETARY OF THE UNITED | ) | |
| STATES DEPARTMENT OF HEALTH | ) | |
| AND HUMAN SERVICES | ) | |
| | ) | |
| Defendant. | ) | |

**STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO DISPUTE**

1. Virginia Hospital Center, Arlington Health Center revoked the staff privileges of Plaintiff, Dr. Ziad Akl, after nurses at the hospital filed harassment charges against him. Am. Compl. ¶ 32; Akl v. Dougherty, No. 06-264, 2006 WL 5363178, at *1 (E.D. Va. June 7, 2006).

2. The Hospital reported a summary suspension of Plaintiff's clinical privileges to the Data Bank ("Report No. 1") on February 9, 2004.  Am. Compl. ¶ 33.

3. On August 20, 2004, the Hospital reported the revocation of Plaintiff's clinical privileges and medical staff appointment to the Data Bank ("Report No. 2").  Am. Compl. ¶ 33.

4. Plaintiff received a copy of Report Nos. 1 and 2 in 2004, shortly after they were issued. See 45 C.F.R. § 60.14.

5. Plaintiff requested Secretarial Review of Report No. 2 on November 29, 2005.  Am. Compl. ¶ 35.

6. Plaintiff requested Secretarial Review of Report No. 1 on May 10, 2006.  Am. Compl. ¶ 35.

7.      During the Secretarial Review of Reports No. 1 and 2, the Data Bank instructed the

Hospital to change the reports to further elaborate on the facts.   Am. Compl. ¶ 36.

8.      On March 21, 2006, the Hospital replaced Report No. 2 with a more detailed report

("Amended Report No. 1").  Am. Compl. ¶ 37.

9.      On May 24, 2006, the Hospital replaced Report No. 1 with a more detailed report

("Amended Report No. 2").  Am. Compl. ¶ 39.

10.     Amended Report No. 1 and Amended Report No. 2 contain the same information as

Report Nos. 1 and 2, but provide a more detailed account of the revocation of Dr. Akl's

privileges.  See Am. Compl. ¶¶ 37, 39.

11.     Plaintiff sought review of Amended Report No. 1 and Amended Report No. 2.  Am.

Compl. ¶¶ 38, 40.

12.     During its review of Amended Report Nos. 1 and 2, the Data Bank found both reports to

be accurate, complete, timely and relevant for agency purposes.  Am. Compl. ¶¶ 38, 40.

13.     HHS informed Plaintiff of its decision regarding Amended Report No. 2 on May 22,

2006, and advised him of his right to an administrative appeal.  See Declaration of Robert

E. Oshel, Ph.D., ¶ 10.

14.     HHS informed Plaintiff of its decision regarding Amended Report No. 1 on June 9, 2006,

and advised him of his right to an administrative appeal.  See Declaration of Robert E.

Oshel, Ph.D., ¶ 9.

15.     Plaintiff did not file an administrative appeal or request for reconsideration of Amended

Report Nos. 1 or 2.  See Declaration of Robert E. Oshel, Ph.D., ¶ 11

2

16.    No HHS entity or agent has revoked or denied Plaintiff's clinical privileges based upon

the information contained in the Data Bank Report.  <u>See</u> Am. Compl. ¶¶ 39, 57.


Respectfully submitted,


  /s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


  /s/ Robin M. Meriweather
ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198   Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of August, 2008, I caused a true and correct copy of the foregoing to be served upon Plaintiff Ziad Akl, Md, via first class mail, postage-prepaid, addressed as follows:

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| ZIAD AKL, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Civil Action No. 8:07-CV-1025 |
| | * | |
| KAREN-FAYE MCTAVISH, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Ziad Akl ("Plaintiff"), acting *pro se*, brings this action for damages and injunctive relief against Defendant Karen-Faye McTavish ("Defendant").  Currently pending before this Court are Defendant's Motion to Dismiss and for Injunction or, in the Alternative, Motion to Transfer (Doc. No. 6), Plaintiff's Motion to Remand to State Court and Award of Costs (Doc. No. 7), and Plaintiff's Motion for Leave to Submit Surreply to Defendant's Motion to Dismiss and for Injunction or, in the Alternative, Motion to Transfer (Doc. No. 13).  The Court has reviewed the entire record, and the pleadings with respect to the instant motions.  No hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons set forth below, the Court will GRANT Defendant's Motion to Dismiss, DENY Plaintiff's Motion to Remand to State Court, and DENY as moot Plaintiff's Motion for Leave to Submit Surreply to Defendant's Motion.

## FACTUAL & PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to the non-movant.  Plaintiff brings this suit against Defendant alleging that the revocation of his medical staff privileges at Virginia Hospital Center – Arlington Health System ("the Hospital") was the culmination of a conspiracy

1

orchestrated by the Hospital employees and physicians, involving falsified documents, fictitious meetings, and perjured testimonies.

Plaintiff is a physician specializing in internal medicine and infectious disease. In 2000, Plaintiff obtained medical staff privileges to practice at the Hospital. In March 2003, two nurses at the hospital complained to the Human Resources Department that Plaintiff harassed them. In response to these claims, Plaintiff addressed the Hospital's Citizenship Committee, alleging that he in fact was the party being harassed. During this time, a review process was conducted in accordance with the Hospital's Medical Credentials Policy. Plaintiff retained counsel and was involved in review proceedings where he received recommendations for ameliorating the situation including, but not limited to, abstaining from contact with his accusers. Plaintiff was warned that his privileges could be suspended if he refused to accept the recommendations. On December 15, 2003, Plaintiff's attorney contacted the two nurses by letter and on December 19, 2003, Plaintiff's medical privileges at the Hospital were suspended. The Hospital's Board of Directors approved the recommendation to revoke Plaintiff's medical privileges.

Plaintiff subsequently brought seven lawsuits in the Virginia State and Federal courts[1] alleging conspiracies among various parties to revoke Plaintiff's medical staff privileges at the Hospital. In total, prior to Plaintiff filing suit in this Court, Defendant served as one of the attorneys representing Plaintiff's opposition in the lawsuits brought by Plaintiff in the Arlington County Circuit Court before the Honorable Judge Swersky between November 2004 and October 2006, concerning the revocation of Plaintiff's medical privileges. Defendant also served as opposing

---

[1] Plaintiff brought four claims in Virginia state court and three in the United States District Court for the Eastern District of Virginia. All of the claims filed in his previous lawsuits have been dismissed by the courts. Plaintiff also appealed the dismissal of his first lawsuit brought in the Eastern District of Virginia to the Fourth Circuit, which affirmed the dismissal.

counsel in the lawsuits filed by Plaintiff in the United States District Court for the Eastern District of Virginia based on the same subject matter. All seven claims have been dismissed.

Following Judge Swersky's dismissal of Plaintiff's fourth state court claim, Plaintiff filed a motion to recuse Judge Swersky, arguing that Judge Swersky participated in a conspiracy to effect the rulings against Plaintiff in his Arlington County cases. Plaintiff was subsequently barred from filing further claims concerning the revocation of his privilege to practice medicine at the Hospital in the Arlington County Circuit Court. Once barred from bringing suit in the Arlington County Circuit Court, Plaintiff brought his second suit in the Eastern District of Virginia, alleging that Judge Swersky, his law clerk, and Defendant conspired together to effect the rulings against Plaintiff in his Arlington County cases. On November 17, 2006, the Eastern District of Virginia dismissed the case. Plaintiff appealed the dismissal to the Fourth Circuit which affirmed the district court's ruling. *See Akl v. Swersky*, No. 07-1017 (4th Cir. 2007).

Plaintiff brought this suit – his eight lawsuit in connection with the revocation of his medical staff privileges at the Hospital which allegedly led to a conspiracy at the state court level to dismiss his claims – in the Circuit Court for Montgomery County, Maryland. The case removed to this court on April 23, 2007, on the basis of federal question jurisdiction. Specifically, Plaintiff brings this suit against Defendant for the following causes of action: (1) denial of Fourteenth Amendment due process in violation of 42 U.S.C. § 1983 (2000) (Count I); (2) deprivation of the equal protection of the laws in violation of the Fourteenth Amendment (Count II); (3) that Defendant aided and abetted the Honorable Judge Swersky, who is not a party to this case, in committing fraud (Count III); (4) tortuous interference with Plaintiff's future economic relationships with hospitals nationwide (Count IV); and (5) intentional infliction of emotional distress (Count V).

3

Defendant moved to dismiss Plaintiff's Complaint (Doc. No. 6) pursuant to Fed. Rule Civ. Pro. 12(b)(6). Plaintiff filed a response to Defendant's motion to dismiss and also filed a Motion to Remand to State Court (Doc. No. 7) and a Motion to Submit Surreply to Defendant's Motion to Dismiss (Doc. No. 13).

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim is appropriate under Rule 12(b)(6) where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true. *See Chisolm v. TranSouth Finan. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Nor is the Court "bound to accept [Plaintiff's] conclusory allegations regarding the legal effect of the facts alleged." *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994). Thus, a complaint may be dismissed as a matter of law if it lacks a cognizable legal theory *or* if it alleges insufficient facts to support a cognizable legal theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed. 1982)).

## DISCUSSION

### Defendant's Motion to Dismiss

      I.   *Count I: Violation of Right to Due Process and Count II: Deprivation of the Equal*

*Protection of the Laws*

In Count I of Plaintiff's Complaint, Plaintiff contends that the Honorable Judge Swersky of the Arlington County Circuit Court and his clerk conspired with Defendant to effect the ruling against Plaintiff in his Arlington County cases. Plaintiff thereby argues that the alleged conspiracy was denied him of his right to due process. Plaintiff states that Judge Swersky, "[u]nder color of state law, . . . fail[ed] to stand at equal distance from the parties . . . by entering with Counsel into an extra-judicial agreement to rule in favor of their clients." (Compl. ¶ 13.). Plaintiff restates this same contention in Count II, arguing that he was deprived of equal protection of the laws.

Defendant argues that Plaintiff's due process and equal protection claims are essentially conclusory allegations challenging the Virginia state court's decision, and argues that Plaintiff cannot seek out review of the Virginia state court's decisions in this federal Court pursuant to the *Rooker-Feldman* doctrine.[2] The doctrine holds that lower United States federal courts have no subject matter jurisdiction to sit in direct review of state court decisions unless Congress has enacted legislation that specifically authorized such relief. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) (affirming that the Rooker-Feldman doctrine applies in cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").

In an Order issued on December 22, 2006, the Honorable Judge Leonie M. Brinkema denied Plaintiff's Motion for Reconsideration of Judge Brinkema's previous ruling in which he granted

---

[2] The Rooker-Feldman doctrine is a rule of civil procedure enunciated by the United States Supreme Court in two cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

Defendant McTavish's Motion to Dismiss. Judge Brinkema also dismissed Plaintiff's equal protection claim – which is also Count II in the Complaint before the Court – based on the Rooker-Felman doctrine. Judge Brinkema stated, "[Plaintiff's] due process and equal protection claims are essentially a repackaging of arguments he presented to the state court and lost."[3] Defendant argues, and this Court agrees, that Plaintiff's claims should be dismissed based on the Rooker-Feldman doctrine, and Plaintiff's proper avenue of appeal of the Virginia state circuit court decisions is within the state court system of Virginia.

This Court, like the District Court for the Eastern District of Virginia, does not believe that Plaintiff's has articulated an independent right, nor has Plaintiff demonstrated that her claims constitute an independent claim sufficient to support a new and separate cause of action from those previously adjudicated in the state court of Virginia. Plaintiff has exercised his right to appeal the decisions of the Virginia state circuit court to the Virginia Supreme Court and was denied relief. Plaintiff cannot seek to have this Court invalidate the Virginia state court's decisions simply because he was dissatisfied with the outcome. Accordingly, the Court will dismiss Counts I and II, with prejudice.

II. *Count III - Aiding and Abetting Fraud*

In this Count, Plaintiff claims that Defendant knew that Judge Swersky intended to defraud Plaintiff and assisted Judge Swersky in defrauding Plaintiff. Plaintiff further contends that Defendant knew or should have known that by aiding in this fraud she would subject Plainitff to distress "beyond what a reasonable person could possibly endure." Defendant correctly asserts that this claim is barred by res judicata. In his second suit brought in the Eastern District of Virginia,

---

[3] *See* Defendant's Motion to Dismiss and for Injunction or, in the Alternative, Motion to Transfer (Doc. No. 6), Exhibit B at 10 – Memorandum Opinion issued by the Honorable Leonie M. Brinkema, United States District Court Judge for the Eastern District of Virginia.

Plaintiff claimed that Defendant conspired with Judge Swersky and his clerk to secure a judgment in favor of her clients in the state court proceedings.  This claim was dismissed, as to Defendamt, pursuant to Rule 12(b)(6) for failure to state a claim upon which relief could be granted.

A prior judgment has a claim preclusive effect on future litigation when: (1) the prior judgment was final and on the merits; (2) the parties are identical; and (3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding. *First Union Commer. Corp. v. Nelson, Mullins, Riley & Scarborough*, 81 F.3d 1310, 1315 (4th Cir. 1996). There is no dispute that the second element of the test is met.  Plaintiff twice previously brought suit against Defendant in the Eastern District of Virginia, and thus, the parties are identical.  Therefore, the Court will briefly discuss the first and third elements.

### a.  Prior Final Judgment on the Merits

Plaintiff's second claim in the Eastern District of Virginia, where Defendant was named a co-defendant, was dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff contends that dismissal pursuant to Rule 12(b)(6) for failure to state claim does not count as a final judgment for the purpose of res judicata.  Plaintiff's contention is inaccurate.  *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) (stating that "dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits'").  The Eastern District of Virginia's dismissal pursuant to Rule 12(b)(6) was a final judgment on the merits, and, thus, the first element is satisfied.

### b.  Claims Based Upon the Same Cause of Action

Although Plaintiff's aiding and abetting claim does not exactly mirror his conspiracy claim, the Court believes that it arises out of the same transaction or series of transactions as the claims resolved in the Eastern District case and thus, can be precluded. *See* Restatement (Second) of

Judgments § 24(2) (1982). In evaluating whether this element is shown, Defendant cites to authority stating that "the appropriate inquiry is whether the new claims arise out of the same transaction or series of transactions as the claim resolved in the prior judgment." *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990). Where the "same series of connected transactions" is involved and "the same 'operative facts' are at issue," the third res judicata factor is satisfied. *Id*. *See also Pueschel v. U.S.*, 369 F.3d 345 (4th Cir. 2004) (finding that res judicata does not require identical claims but asks whether claims arise out of the same transaction and have the same operative facts in order to avoid allowing claims to proceed where the Plaintiff artfully pleads a different claim). Here, Defendant asserts that Plaintiff's claims are based on the same allegations and operative facts on which he based his second claim in the Eastern District of Virginia. The Court agrees with Defendant's assertions.

By precluding parties in a subsequent proceeding from raising claims raised in prior proceeding, "res judicata . . . encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown v. Felsen*, 442 U.S. 127 (1979). As previously noted, this Court will not second guess the Eastern District of Virginia. Accordingly, the Court will dismiss Plaintiff's aiding and abetting claim with prejudice.

III. *Count IV: Tortious Interference with Economic Relationships*

Plaintiff alleges that Defendant interfered with his future ability to secure employment contracts and contracts with health insurance carriers in the medical community by writing a defamatory report to the National Practitioner Data Bank (the "Report") about Plaintiff. Plaintiff's claim is wholly conclusory and contains no facts in support of his conclusory allegations. The only

fact alleged is that Defendant submitted the Report.[4]  However, Defendant's Exhibit F in the Motion

to Dismiss clearly indicates that the Report was submitted by the Hospital and not Defendant.

Further, pursuant to 42 U.S.C. § 11137(c), any reports filed with the National Practitioner Data Bank

are federally mandated reports subject to a qualified privilege.  In order to overcome that privilege,

one must show that the reporter had "knowledge of the falsity" of the report.[5]  Even if Defendant

had submitted the Report, which the record indicates that she did not, Plaintiff's complaint is devoid

of any factual allegation that Defendant had "knowledge of the falsity" of any information contained

in the Report.  Plaintiff has not overcome this qualified privilege.

Moreover, Plaintiff has already brought his tortious interference claim against Defendant in

the Eastern District of Virginia based on these same allegations he now raises in support of his claim

before this Court.  Those claims were dismissed in that court, as the court stated:

> Plaintiff had the opportunity to litigate the issues and facts
> surrounding the . . . tortious interference claims before the state court.
> Plaintiff did in fact vigorously pursue [the claim] before the state
> court, but that court found them lacking as a matter of law and
> dismissed them.  Plaintiff may not breath[e] new life into claims that
> were previously settled by trying to bring them in a different court
> with different parties.[6]

The Court agrees with the Eastern District of Virginia and will, accordingly, dismiss Plaintiff's

claim of tortuous interference  for failure to state a claim upon which relief can be granted, with

---

[4] Where Plaintiff referenced the report in his complaint, the report is properly considered a part of the pleadings. *See Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995), *aff'd*, 103 F.3d 351 (4th Cir. 1996), ("When a plaintiff fails to introduce a pertinent document as part of his complaint the defendant may attach the document to a motion to dismiss the complaint and the court may consider the same without converting the motion to one for summary judgment.").

[5] "No person or entity . . . shall be held liable in any civil action with respect to any report made under this part [42 USCS §§ 11131 et seq.] . . . without knowledge of the falsity of the information contained in the report." 42 USCS § 11137(c).

[6] *See* Defendant's Motion to Dismiss and for Injunction or, in the Alternative, Motion to Transfer (Doc. No. 6), Exhibit D at 6-7 – June 7, 2006 Order issued by the Honorable Clause M. Hilton, United States District Court Judge for the Eastern District of Virginia.

prejudice.

    *IV.  Count V: Intentional Infliction of Emotional Distress*

    In Count V, Plaintiff contends that Defendant intentionally inflicted emotional distress. This claim was dismissed, as to Defendant, pursuant to Rule 12(b)(6) for failure to state a claim upon which relief could be granted.  Plaintiff's intentional infliction of emotional distress claim is identical to the claim brought in Plaintiff's second claim before the Eastern District of Virginia. Plaintiff may not simply re-file his previously dismissed claim in this jurisdiction.  Accordingly, the Court will dismiss Count V, with prejudice.

**Plaintiff's Motion to Remand to State Court and Plaintiff's Motion for Leave to File Surreply**

    In light of the Court's ruling on Defendant's Motion to Dismiss, the Court will deny Plaintiff's Motion to Remand to State Court, as this Court has dismissed all five of Plaintiff's claims, with prejudice.  In addition, the Court will deny Plaintiff's Motion for Leave to Submit Surreply to Defendant's Motion to Dismiss as moot.

<strong><u>CONCLUSION</u></strong>

    For the reasons stated above, the Court will GRANT Defendant's Motion to Dismiss with prejudice (Doc. No. 6), DENY Plaintiff's Motion to Remand to State Court and Award of Costs (Doc. No.7), and DENY as moot Plaintiff's Motion for Leave to Submit Surreply to Defendant's Motion to Dismiss (Doc. No. 13). An Order consistent with this Memorandum Opinion will follow.

Date:   <u>December 21, 2007</u>                <u>       /s/       </u>
                                       Alexander Williams, Jr.
                                       United States District Court Judge

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ZIAD AKL, MD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 08-CV-0461 RBW** |
| | ) | |
| HONORABLE MICHAEL LEAVITT | ) | |
| SECRETARY OF THE UNITED | ) | |
| STATES DEPARTMENT OF HEALTH | ) | |
| AND HUMAN SERVICES | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF ROBERT E. OSHEL, Ph.D.

I, Robert E. Oshel, hereby declare as follows:

1. I am the Associate Director of the Division of Practitioner Data Banks, Bureau of

Health Professions, Health Resources and Services Administration, U.S. Department of Health

and Human Services.

2. I am authorized to furnish information relative to records maintained by the National

Practitioner Data Bank (Data Bank), P.O. Box 10832, Chantilly, Virginia, 22021. The Data

Bank, created pursuant to the provisions of 42 U.S.C.A. § 11101 *et seq.*, is the depository of

records and reports mandated by the Health Care Quality Improvement Act of 1986. The

collection and dissemination of these records is governed by 45 CFR Part 60 with same

considered "official records" of the U.S. Department of Health and Human Services.

1

3. On February, 9, 2004, Arlington Hospital submitted an Adverse Action Report to the Data Bank (Report Number 5500000032415784), regarding Ziad A. Akl, MD ("Report No. 1"). The Report was of Arlington Hospital's suspension of clinical privileges of this practitioner.

4. On August 20, 2004, Virginia Hospital Center submitted a Revision to Action report (Report Number 5500000034632196), regarding Ziad A. Akl, MD ("Report No. 2") . The Report was of Virginia Hospital Center's denial of clinical privileges restoration or reinstatement of this practitioner.

5. On May 24, 2006, Virginia Hospital Center submitted a Correction Report (Report Number 5500000041902990) to Report No. 1 ("Amended Report No. 1").

6. On March 21, 2006, Virginia Hospital Center submitted a Revision to Action report (Report Number 5500000041115021), replacing Report No. 2 with a more detailed report ("Amended Report No. 2").

7. On May 25, 2006, Secretarial Review was initiated for Amended Report No. 1.

8. On April 26, 2006, Secretarial Review was initiated for Amended Report No. 2.

9. By letter dated June 9, 2006, Dr. Akl was informed of the Secretarial Review decision for Amended Report No. 1. This letter informed Dr. Akl of his right to appeal this decision by requesting reconsideration.

10. By letter dated May 22, 2006, Dr. Akl was informed of the Secretarial Review decision for Amended Report No. 2. This letter informed Dr. Akl of his right to appeal this decision by requesting reconsideration.

11.  Dr. Akl did not request a reconsideration or appeal of the Secretarial Review decisions (referenced in ¶ 9 and ¶ 10 above) for Amended Report No. 1 or Amended Report No. 2.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.  Executed this 30th day of July, 2008.

Robert E. Oshel, Ph.D.

3